# W. Lloyd Grafton

### Consultant / Expert Witness
### 3896 Hwy 33
Ruston, Louisiana 71270
Telephone (318) 255-4214
Fax (318) 255-6254


March 6, 2021


RE:   Keeven Robinson vs. Jefferson Parish Sheriff's Office


I have reviewed the following information:

- District Attorney Jefferson Parish Final Report concerning the Death of Keeven Robinson

- Criminal History of Keeven Robinson

- Map of Vehicular Flight

- Photos of Crash Scene

- Map of Foot Pursuit

- Transcript of Lowe's Statement

- Transcript of Spodoni's Statement

- Transcript of Brister's Statement

- Transcript of Bordelon's Statement

- Photos of Mitsubishi Outlander

- Coroner's Report

- Brister's Second Statement

- Spodoni's Second Statement

- Bordelon's Second Statement



EXHIBIT

1

- Lowe's Second Statement

- Jefferson Parish Sheriff's Department Homicide Report

- Louisiana State Police Report

- Shantrell Moran's Interview

- Natallia Phelan Interview Transcripts

- Melvin Thompson Radio Transmission

- Darder and Hill EMT Statements

- Tate, Jackson and Ortiz Statements

- Prior Complaints Against Officers (From District Attorney's Final Report)

- Medical Reports (From District Attorney's Final Report)

- Forensic Panel's Report

- Use of Force Expert Katsaris CV

- Use of Force Expert Report (From District Attorney's Final Report)

In addition to the above referenced material, I am basing my remarks and evaluation on my twenty-four (24) years as an Associate Professor of Criminal Justice in the University of Louisiana System, my twenty-three (23) years as a U.S. Special Agent, and my experience in police procedures. I am also basing my opinion on my involvement in law enforcement training at local, state, and national academies during much of these fifty (50) years.

Throughout, I shall be referring to such materials as current police periodicals on policing, as well as my experience in police policy compliance. I will also refer to International Association Chiefs of Police Policy, Procedures and Models Manual, as well as the quarterly newsletter. I will also refer to the PPCT Instructor Manual concerning Use of Force as well as the Jefferson Parish Sheriff's Department Policy and Procedures Manual.

The following is a statement of the opinions I intend to express and the basis and reasons for them:

## Opinion Number One

It is my opinion to a reasonable degree of professional certainty that Mr. Keeven Robinson had his civil rights violated when he was struck repeatedly in the head and body on May 10, 2018 by officers David Lowe, Jason Spodoni, Gary Bordelon, and Justin Brister, of the Jefferson Parish Sheriff's Office. This action was clearly excessive and objectively unreasonable, consciously indifferent resulting in harm to Mr. Robinson.

## Opinion Number Two

It is my opinion to a reasonable degree of professional certainty that officers David Lowe, Jason Spodoni, Gary Bordelon, and Justin Brister, of the Jefferson Parish Sheriff's Office who were present at the arrest of Keeven Robinson on May 10, 2018 violated acceptable law enforcement practices as well as their training when they attempted to handcuff Mr. Robinson.

## Opinion Number Three

It is my opinion to a reasonable degree of professional certainty that on May 10, 2018 officers David Lowe, Jason Spodoni, Gary Bordelon, and Justin Brister, of the Jefferson Parish Sheriff's Office did not follow their training or guidelines concerning the amount of force to be used in taking someone into custody.

## Opinion Number Four

It is my opinion to a reasonable degree of professional certainty that on May 10, 2018 officers David Lowe, Jason Spodoni, Gary Bordelon, and Justin Brister, of the Jefferson Parish Sheriff's Office failed to follow PPCT Training which is designed to use only that force necessary and reasonable when taking a person into custody.

## Opinion Number Five

It is my opinion to a reasonable degree of professional certainty that on May 10, 2018 officers David Lowe, Jason Spodoni, Gary Bordelon, and Justin Brister, of the Jefferson Parish Sheriff's Office did not properly document the amount of force used on Mr. Keeven Robinson.

## II.

The facts or data I considered in forming these opinions include those facts and data set forth in the documents identified in the beginning of my report and include, but are not limited to the following specific facts and data:

## GENERAL FACTS

The Jefferson Parish District Attorney's Office wrote a report concerning the death of Keeven Robinson who died in the custody of the Jefferson Parish Sheriff's Office.

The report states:

### B. Summary

*Beginning in the early part of April 2018, Jefferson Parish Sheriff's Office narcotic agents conducted an undercover investigation of Keeven "Maxx" Robinson, who was suspected of trafficking cocaine and heroin on the East Bank of Jefferson Parish. During their investigation, agents determined that Robinson utilized a black Mitsubishi Outlander with tinted windows and a temporary tag to bring drugs from his residence in Orleans Parish into a Shrewsbury neighborhood of Jefferson Parish where he would conduct his narcotics transactions. On May 10, 2018, investigators implemented their previously formulated plan whereby they would follow Robinson as he left his residence in New Orleans traveling to Jefferson Parish. However, while attempting to make the stop Robinson flew from the agents, first in his vehicle and then on foot. The agents ultimately apprehended him in a backyard, where a struggle ensued as Robinson resisted the efforts of the four agents who were attempting to take him into custody. Shortly after the agents secured Robinson in handcuffs, they discovered he was unresponsive. Despite life-saving efforts by several officers, EMT's and hospital staff, Robinson died.*

From all that I have reviewed and know about this matter, it should not have ended with death of Keeven Robinson.

From the information I reviewed the officers involved in this investigation:

> Agent David Lowe,
> Agent Jason Spodoni,
> Agent Gary Bordelon,
> and Agent Justin Brister

all knew Keeven Robinson was dealing illegal narcotics; was a convicted felon and was known to carry a firearm.

On the morning of May 10, 2018 a felony arrest plan was made by the Jefferson Parish Narcotics Unit.

That plan to take Mr. Robison into custody when the agents entered Jefferson Parish went wrong when Robinson reentered his vehicle and fled.

A short vehicle pursuit followed.

A timeline of five minutes passed from the time Mr. Robinson reentered his vehicle until he lay on the ground unresponsive.

Robinson's vehicle collided with Agent Spodoni's vehicle and came to rest near the intersection of Labarre Place and Lurline Drive.

Agent Lowe arrived and blocked in Robinson's vehicle and other agents arrived on the scene.

Robinson jumped from his vehicle and ran away scaling a 6 ft. fence and continued running through yards and over fences.

After Robinson went over another 6 ft. fence, he was caught up to Agent Brister.

Agent Brister then told Robinson to give up.

Agent Brister stated he attempted to take Robinson into custody, but Robinson took a fighting stance and resisted.

As Robinson physically resisted Agent Brister, three other agents joined in the struggle – Spodoni, Bordelon, and Lowe.

All four agents described the holds and techniques they used: all according to their use of force training.

According to the agents, it took two to three minutes of struggling with Mr. Robinson before he laid lifeless on the ground.

Keeven Robinson stood 5'11" and weighed about 138 pounds. He was grossly outweighed by the arresting officers, one weighing 180 lbs. and three weighing over 200 lbs.

The autopsy by the Jefferson Parish Coroner's Office stated the cause of death was compressional asphyxia and blunt force injuries.

The Jefferson Parish District Attorney's Office used a group known as The Panel to review the findings.

The report stated:

### A. *The Forensic Panel's Independent Medical Review*

*Given the nature of the injuries suffered by Robinson and the circumstances that led to these injuries, the District Attorney's office decided that an independent medical review would be appropriate. After considerable research and consultation, the Forensic Panel (The Panel) was retained to conduct an independent peer-reviewed pathology death investigation.*

*The Panel is recognized as a leading forensic pathology practice in the United States. A peer-reviewed death investigation is a process in which a panel of experts in Behavioral and Forensic Sciences evaluate the documented evidence and prepare a report of those findings. Peer-review ensures accountability for the forensic expert's determination of what evidence bears most on the cause and mode of death and safeguards the integrity of the forensic investigation.*

Further in the report it states:

*The Panel agreed with the findings of the Jefferson Parish Coroner's office that compressional asphyxia and blunt force injuries where the most likely cause of death. The Panel concluded that the medical findings at autopsy were consistent with the detailed descriptions as provided by the officers of their actions.*

*The use of a lethal chokehold was considered but ruled out. The Panel noted that the posterior neck injuries and vertebrae injuries of Robinson are not a feature of chokeholds. In reported cases of chokehold deaths, there are often fractures of the larynx or hyoid. Mr. Robinson's neck showed separation of the hyoid from the thyroid cartilage but without fracture, and the hyoid was intact. If officers had utilized a chokehold, pressure on the left side of the neck should have caused right-sided injury, which it did not. Robinson's injuries were only on the left.*

> *The Panel also agreed that the contusions, abrasions and small lacerations observed on examination as well as the injuries to deep and superficial muscles of the neck, torso and extremities are indicative of blunt force trauma.*

This explanation that a lethal chokehold was considered but ruled out because there was no fracture of the larynx or hyoid – but the autopsy states there was the separation of the hyoid from the thyroid cartilage and that contributed to his death.

In the Conclusion of the Forensic Panel Report is stated:

> *The former was due to blunt force injury from the pressure of the knee(s) subduing his head and neck and also blows inflicted to the side of his head. These were associated with a tear of the vertebral artery, damage to C-1 and C-2 vertebrae and epidural hemorrhage around the upper cervical cord. This injury requires forceful rapid deflection of the neck to one side, in this case to the right, placing the left vertebral artery on a severe stretch resulting in a stretch and tear injury of the vessel.*

> *The severity of the injuries was not appreciated by the arresting officers. After he was handcuffed, all laid down or otherwise collected themselves from the fatigue of the struggle nearby. It was only the arrival of Detective Whittington and his unsuccessful attempts to engage the suspect that resulted in the discovery that Mr. Robinson had no pulse and was not breathing. Officers then attempted to revive him while waiting for EMS to arrive.*

These injuries would not have occurred in my professional opinion if the officers had used only the force necessary and reasonable.

There were four well-trained able bodied law enforcement personnel present.

Jefferson Parish Forensic Center Examination Report findings:

### *Forensic Examination Report*

#### *FINDINGS*

*I. Compressional asphyxia*
- *A. Decedent involved in altercation with law enforcement on 5/10/2018*
- *B. Bilateral scleral hemorrhages*
- *C. Bilateral conjunctival petechiae*
- *D. Hemorrhage of the soft tissues of the anterior neck*
- *E. Traumatic separation of the hyoid bone and thyroid cartilage*

II. *Blunt force injuries*

    A. *Head and neck*

        i. *Abrasion of the forehead*

        ii. *Bilateral periorbital contusions*

        iii. *Contusions of the face*

        iv. *Subscapular hematomas*

        v. *Hemorrhage of soil tissue of the left side of the posterior neck*

        vi. *Lacerated left vertebral artery*

        vii. *Separation of the 1st and 2nd cervical vertebras*

        viii. *Epidural hemorrhage overlying proximal cervical spinal cord*

    B. *Torso*

        i. *Abrasions and contusions of the chest and abdomen*

        ii. *Soft tissue hematomas of the chest, back, bilateral buttocks*

    C. *Extremities*

        i. *Abrasions and lacerations of the bilateral upper extremities*

        ii. *Soft tissues hematomas of the bilateral upper and lower extremities*

III. *Acute asthmatic exacerbation*

    A. *History of asthma, medical records reviewed*

IV. *Toxicology results, see separate report*

    A. *Blood drug screen:*

        i. *cotinine and naloxone detected*

        ii. *delta-9 carboxy THC: 18 ng/ml*

        iii. *delta-9 THC: 4.3*

        iv. *tramadol: 130 ng/mL*

        v. *O-desmethyltramadol: 58 ng/mL*

    B. *Blood alcohol screen: none detected*

*Comment: The decedent is a 22-year-old African American male with a history of asthma who expired following flight from law enforcement officers subsequent physical. Altercation. Following a Coroner's Office case review and consensus meeting conducted on 7/17/2018 at 0900 hours and attended by Dr. Dana Traxclair (Chief Forensic Pathologist), Dr. Marianna Eserman (Forensic Pathologist), Dr. Ellen Connor (Forensic Pathologist), Anthony Buras (Chief of Operations), and Mark Bone (Chief Death Investigator), it is determined that the cause of death is best described as Compressional Asphyxia and Blunt Force Injuries. The manner of death is best classified as Homicide.*

This was a felony arrest. They had information Robinson carried a weapon – and he did. It was later found in his vehicle.

When Robinson stopped and positioned himself in a fighting stance - the agent believed he had a firearm. Why didn't the agents arm themselves and direct Robinson to get on the ground?

Throughout the two to three minutes the agents were attempting to take Mr. Robinson into custody they all described him as reaching into his waistband – and they thought he might have a gun!

"I am always 'baffled' by the number of people who are beaten while being arrested and they continue to reach into their waistband for a firearm they don't have."

The four agents should have been able to grab Mr. Robinson and place him on the ground – handcuff him and pick him up in 12 to 15 seconds in my opinion.

The force used on Keevan Robinson in my opinion was not necessary or reasonable in taking him into custody.

Louisiana Law Enforcement Officers are trained in PPCT, a Use of Force program that teaches officers to use proportionate levels of control to counter resistance from suspects. It is widely accepted in the United States as the best Use of Force program and is used throughout Louisiana in its police academies. The touchstone of the program is called the Use of Force Continuum, which teaches the One-Plus-One theory of control. Officers in this continuum are authorized to use one level of force above the level of resistance they encounter. PPCT is consistent with Constitutional restrictions on use of force by law enforcement because it teaches that force must only be used when:

- *There is a need for the application of force.*

- *The force used must be proportionate.*

- *The subject's injuries must be proportionate to the subject's level of resistance or threat to the officer or another.*

- *The force used must be applied in good faith, based upon what a reasonable officer would do at the time.*

*These restrictions on force are consistent with Supreme Court jurisprudence in Graham v. Conner, 490 US 386 (1989).*

The courts have ruled that police must be 'objectively reasonable' in their use of force considering the 'totality of the circumstances.'

The PPCT Continuum has been accepted as force that is objectively reasonable and has proven to be safe for both law enforcement as well as the person being apprehended.

The force used on Keeven Robinson violated this training.

The Louisiana Law Enforcement Handbook, published by the Louisiana District Attorneys Association, addresses use of force against the person in Chapter 2's Introduction:

## CHAPTER II

### USE OF FORCE AGAINST THE PERSON

#### INTRODUCTION

*The law enforcement officer often may encounter rapidly changing situations that signal the need for the use of force against suspects. Under such circumstances, the officer must decide quickly and correctly the degree of force authorized.*

*A police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his actions. His authority must at all time be exercised in a reasonable fashion, and he must act as a reasonable prudent man under circumstances. But unreasonable or excessive force is a breach of an officer's duty."*

The actions of the four agents of the Jefferson Parish Sheriff's Office were in my opinion a clear violation of this policy.

*Claims that law enforcement officials have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are most properly characterized as invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable seizures," and must be judged by reference to the Fourth Amendment's "reasonableness" standard. The Fourth Amendment "reasonableness" inquiry is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Graham v. Connor, 490 US 386(1989).*

The agents who were present at the arrest used unreasonable and unnecessary force. When a reasonable person, much less a reasonable law enforcement officer, examines the totality of the circumstances the agents did not follow his law enforcement training.

## III.

My qualifications are attached in my Resume, Exhibit "A".

## IV.

This list of all other cases in which, during the previous seven years I have testified as an expert at trial or by deposition, are attached in my Resume, Exhibit "A".

## V.

My fee schedule is attached in my Resume, Exhibit "A".

I reserve the right to modify, change and/or supplement my opinion as I review additional information furnished me concerning this matter.

W. Lloyd Grafton
Associate Professor of Criminal Justice
U.S. Special Agent (Retired)