UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WACHELLE BOUTTE et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 19-9613 c/w 19-10327** |
| **JOSEPH P. LOPINTO, III et al.** | **SECTION: "G"** |

## ORDER AND REASONS

Before Court is Defendant Joseph P. Lopinto's ("Lopinto") "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)."[1] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

### A. Factual Background

On April 23, 2019, Plaintiff Wachelle Boutte, *individually as surviving spouse and as the natural tutrix of My'Keeven Robinson and as representative of the estate of Keeven Robinson* ("Boutte"), filed a Complaint in this Court in case number 19-9613.[2] In the Complaint, Boutte alleges that on or about May 10, 2018, decedent Keeven Robinson ("Mr. Robinson") was involved in a police stop while Mr. Robinson was exiting a Shell gas station in Jefferson Parish, Louisiana.[3] According to Boutte, Mr. Robinson was the target of a Jefferson Parish Sheriff's Office undercover

---

[1] Rec. Doc. 71. Unless otherwise indicated, citations to record documents in this Order and Reasons refer to case number 19-9613.

[2] Rec. Doc. 2.

[3] *Id.* at 3.

1

investigation accusing Mr. Robinson of dealing narcotics.[4] Boutte alleges that as Mr. Robinson was exiting the gas station in his vehicle, Jefferson Parish Sheriff's Officers David Lowe, Jason Spadoni, Justin Brister, and Gary Bordelon (collectively, "JPSO Defendants") "attempted to box" in Mr. Robinson's vehicle and "purposefully collided" with the vehicle driven by Mr. Robinson.[5] According to Boutte, Mr. Robison then exited the vehicle he was driving and began to run.[6] Boutte alleges that after a brief chase, Mr. Robinson surrendered to JSPO Defendants after which JPSO Defendants "began to hold Mr. Robinson down on the ground while beating him."[7] Boutte claims that Mr. Robinson stopped breathing while JPSO Defendants were "beating and choking him," and Mr. Robinson was transported to Ochsner Medical Center where he was pronounced dead.[8] According to Boutte, initial autopsy findings reveal "significant traumatic injuries to Mr. Robinson's neck" and "Mr. Robinson's death was ruled a homicide by asphyxiation" according to the Jefferson Parish Coroner's Office.[9]

Boutte originally brought Section 1983 claims for excessive force, failure to train, failure to supervise, deliberate indifference, supervisory liability, and battery against JPSO Defendants, Sheriff Joseph Lopinto III, Jefferson Parish Sheriff's Office, and ABC Insurance Company.[10]

---

[4] *Id.*

[5] *Id.* at 4.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] Rec. Doc. 2.

Boutte also alleged that Defendants are jointly and severally liable for gross negligence.[11] Boutte seeks wrongful death, survival, and punitive damages, along with attorneys' fees and costs.[12]

On May 10, 2019, Plaintiff Kiwanda Robinson ("Ms. Robinson"), the mother of decedent Mr. Robinson, filed a Complaint in this Court in case number 19-10327 against the same defendants.[13] Ms. Robinson sets forth the same allegations regarding the police stop involving Mr. Robinson.[14] Ms. Robinson alleges that she arrived on the scene "immediately after Mr. Robinson was apprehended and choked to death by the defendants."[15] According to Ms. Robinson, she witnessed Mr. Robinson "lying lifeless on the ground."[16] Ms. Robinson originally brought state law claims for wrongful death, survival, and bystander damages, as well as constitutional federal and state law claims.[17] Ms. Robinson also alleged that defendants are jointly and severally liable.[18]

### B.   *Procedural Background*

On June 9, 2020, upon motion by Defendants, the Court entered an order staying both cases pending completion of a criminal investigation by the Jefferson Parish District Attorney's Office.[19] On September 25, 2020, upon motion by Boutte, the Court lifted the stay in case number 19-

---

[11] *Id.* at 19.

[12] Rec. Doc. 2.

[13] 19-10327, Rec. Doc. 1.

[14] *Id.*

[15] *Id.* at 4.

[16] *Id.*

[17] 19-10327, Rec. Doc. 1.

[18] *Id.* at 11.

[19] 19-10327, Rec. Doc. 24.

9613.[20] On March 25, 2021, upon motion by Ms. Robinson, the Court lifted the stay in case number 19-10327.[21] Also on March 25, 2021, the Court consolidated the two cases.[22]

After the cases were consolidated, Lopinto filed a motion for summary judgment seeking to dismiss Ms. Robinson's claims.[23] Lopinto argued that Ms. Robinson lacked standing to bring her federal constitutional claims and her state law claims—with the exception of her bystander claim—because Louisiana law vests surviving spouses with a superior and exclusive right to bring survival actions over a surviving parent.[24] Rather than oppose Lopinto's motion for summary judgment, Ms. Robinson filed a motion to dismiss the claims referenced in the motion.[25] This Court granted those motions and dismissed Ms. Robinson's claims, with the exception of her bystander claim.[26]

On December 8, 2021, Lopinto filed the instant motion to dismiss Ms. Robinson's remaining state law bystander claim for lack of jurisdiction.[27] Lopinto noticed the motion for submission on December 29, 2021.[28] However, because the pretrial conference in this matter is set

---

[20] Rec. Doc. 34.

[21] 19-10327, Rec. Doc. 30.

[22] 19-10327, Rec. Doc. 31.

[23] Rec. Doc. 47.

[24] Rec. Doc. 47-1 at 5–6. In the same motion, Lopinto also sought dismissal of Boutte's federal claims against Lopinto in his official capacity as sheriff of Jefferson Parish. *Id.* at 12–17.

[25] Rec. Doc. 67. Like Ms. Robinson, Boutte filed a motion to dismiss the claims referenced in Lopinto's motion, which this Court granted. Rec. Docs. 68, 70.

[26] Rec. Doc. 70.

[27] Rec. Doc. 71.

[28] Rec. Doc. 71-2.

for December 16, 2021, the Court ordered the motion set for submission on December 15, 2021 and ordered Ms. Robinson to respond by December 13, 2021.[29] Ms. Robinson filed her opposition on December 13, 2021.[30] Lopinto moved for leave to file a reply, which this Court granted.[31]

## II. Parties' Arguments

### A.     *Lopinto's Arguments in Support of the Motion to Dismiss*

Lopinto moves the Court to dismiss Ms. Robinson's remaining state law bystander claim for lack of jurisdiction.[32] In support, Lopinto reiterates his argument that Ms. Robinson lacked standing to bring suit under Louisiana's survival action law.[33] Without standing to bring suit, Lopinto contends that the Court never had original subject matter jurisdiction over Ms. Robinson's federal claims.[34] Lopinto asserts that the Court cannot exercise supplemental jurisdiction over a claim without an independent claim over which the Court has original subject matter jurisdiction.[35] Therefore, Lopinto argues that Ms. Robinson's remaining state law bystander damages claim must be dismissed, because there was "never" any claim over which this Court had original subject matter jurisdiction.[36]

---

[29] Rec. Doc. 73.

[30] Rec. Doc. 74.

[31] Rec. Docs. 76, 80.

[32] Rec. Doc. 71-1 at 1.

[33] *Id.* at 5.

[34] *Id.* at 5–6.

[35] *Id.* at 7–8.

[36] *Id.* at 8.

B.     *Robinson's Arguments in Opposition to the Motion to Dismiss*

In opposition, Ms. Robinson requests that the Court exercise supplemental jurisdiction over her remaining claim.[37] Ms. Robinson notes that under 28 U.S.C. § 1367, the Court has discretion to exercise supplemental jurisdiction over state law claims after dismissing claims over which it had original jurisdiction.[38] Ms. Robinson asserts that the discretionary factors in Section 1367 weigh in favor of exercising supplemental jurisdiction.[39] Specifically, Ms. Robinson asserts that her claim does not present a "novel or complex issue of [state] law" and "does not substantially predominate over the claims over which the district court . . . had original jurisdiction."[40] Further, Ms. Robinson asserts that her remaining claim "is premised on the same facts" as the claims remaining in this consolidated action and that "[t]here are no compelling reasons to decline jurisdiction."[41] Additionally, Ms. Robinson avers that "the common law factors of judicial economy, convenience, fairness, and comity weigh in favor of exercising supplemental jurisdiction."[42] Finally, Ms. Robinson argues that because this case arises from the same nucleus of operative fact as Boutte's claims, "it would be more convenient to have the cases tried in one court at the same time, provided both cases involve the same Defendants and most of the same witnesses."[43]

---

[37] Rec. Doc. 74 at 3.

[38] *Id.* at 4.

[39] *Id.* at 4–5.

[40] *Id.* at 5.

[41] *Id.*

[42] *Id.*

[43] *Id.* at 6.

C. ***Lopinto's Arguments in Further Support of the Motion to Dismiss***

In reply, Lopinto maintains that "the entire point is that the Court never had original jurisdiction over a valid federal claim pursuant to 28 U.S.C. § 1331 or under Article III of the United States Constitution."[44] On that basis, Lopinto argues that "the Court should not consider the statutory factors in 28 U.S.C. § 1367(c)" and "should not consider the . . . common law factors" because the Court "never had original jurisdiction over a valid federal claim."[45]

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides that an action may be dismissed "for lack of subject-matter jurisdiction."[46] "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."[47] "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[48]

## IV. Analysis

Lopinto moves the Court to dismiss Ms. Robinson's remaining state law bystander claim for lack of jurisdiction.[49] Lopinto argues that Ms. Robinson lacked standing to assert her federal claims because Section 1983 borrows from Louisiana law, which creates classes of survivors and

---

[44] Rec. Doc. 79 at 2.

[45] *Id.* at 2–3.

[46] Fed. R. Civ. P. 12(b)(1).

[47] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)).

[48] *Id.* (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

[49] Rec. Doc. 71-1 at 5–9.

"[t]he existence of a person qualifying within a higher class prevents a person in a lower class from filing suit."[50] Without standing, Lopinto asserts that the Court lacked original jurisdiction over Ms. Robinson's federal claims.[51] And, without original jurisdiction over a claim, Lopinto contends that the Court cannot exercise supplemental jurisdiction over Ms. Robinson's remaining state law claim.[52] Thus, Lopinto argues Ms. Robinson's remaining state law claim must be dismissed.[53]

However, Ms. Robinson lacked *statutory* standing to assert her federal claims, not *constitutional* standing. "Article III standing is distinct from statutory standing."[54] "[S]tatutory standing is not indicative of Article III jurisdictional standing."[55] "[W]hether or not a particular cause of action authorizes an injured plaintiff to sue is a merits question, affecting statutory standing, not a jurisdictional question, affecting constitutional standing."[56] In addition to constitutional standing, for Section 1983 claims, "a party must have standing under the state wrongful death or survival statutes."[57]

Here, as Mr. Robinson's surviving mother, Ms. Robinson lacked *statutory* standing to bring a Section 1983 claims because Louisiana's survival statute grants a superior right to bring a

---

[50] *Id.* at 6.

[51] *Id.* at 7–8.

[52] *Id.* at 8.

[53] *Id.*

[54] *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 546 (5th Cir. 2016).

[55] *Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 332 (5th Cir. 2014).

[56] *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008).

[57] *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) (citing 42 U.S.C. §§ 1981, 1983, 1988).

survival action to surviving spouses.[58] However, Ms. Robinson did not lack constitutional standing to bring her federal claims.[59]

Lopinto asserts that this Court's Order granting his motion for summary judgment "confirms . . . that [Ms. Robinson] lacked standing to assert any federal claim and, thus, the Court never had jurisdiction over any valid federal claim."[60] The Court is not persuaded. Lopinto's motion for summary judgment did not refer to constitutional standing, nor did it cite to the Constitution or any case law interpreting Article III's standing requirement.[61] Instead, the motion for summary judgment exclusively discussed Louisiana's survival action articles and argued that "Plaintiff Robinson lack[ed] standing to bring her claims *under state law*."[62] Thus, granting that motion had no bearing Ms. Robinson's constitutional standing to assert her Section 1983 claims. Rather, the Order held only that Ms. Robinson lacked statutory standing under the survival action article of the Louisiana Civil Code. Therefore, the Court had original subject matter jurisdiction over Ms. Robinson's Section 1983 claims pursuant to 28 U.S.C. § 1331.

Nevertheless, the Court must decide whether to exercise supplemental jurisdiction over Ms. Robinson's remaining state law claim. Section 1367 provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within

---

[58] *See* La. Civ. Code art. 2315.1, 2315.2.

[59] To establish constitutional standing, a plaintiff must show (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) that it is likely the injury will be redressed by a favorable decision. *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The allegations in Ms. Robinson's complaint plainly satisfy these requirements.

[60] Rec. Doc. 71-1 at 5.

[61] *See generally* Rec. Doc. 47-1.

[62] *Id.* at 5–9 (emphasis added).

such original jurisdiction that they form part of the same case or controversy."[63] However, a court "may decline to exercise supplemental jurisdiction over a claim" if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[64]

The Court finds that the discretionary factors in Section 1367 militate in favor of exercising supplemental jurisdiction. Ms. Robinson's claim does not raise a novel or complex issue of state law—it is a tort claim for bystander damages. The claim does not substantially predominate over any claims over which the Court has original jurisdiction. Indeed, the evidence and witnesses for this claim are nearly identical to the evidence and witnesses for Boutte's claims. Nor are there "other compelling reasons for declining jurisdiction."[65] Furthermore, Ms. Robinson's complaint was filed on May 10, 2019.[66] The case was pending for over two years before Lopinto moved to dismiss Ms. Robinson's bystander claim.[67] Moreover, the instant motion was filed on December 8, 2021, just one month before trial is scheduled to commence.[68] Accordingly, in the interest of judicial economy, the Court will exercise supplemental jurisdiction over Ms. Robinson's remaining state law claim for bystander damages.

---

[63] 28 U.S.C. § 1367.

[64] *Id.*

[65] *Id.*

[66] Case No. 19-10327, Rec. Doc. 1.

[67] Rec. Doc. 71.

[68] *Id. See also* Rec. Doc. 45.

## V. Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Lopinto's Motion to Dismiss[69] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 16th day of December, 2021.

*[signature: Nannette Jolivette Brown]*
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[69] Rec. Doc. 71.